IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN E. DANNENBERG, | No. C 06-0403 CW |
|     Petitioner, | |
|   v. | ORDER GRANTING RESPONDENT'S MOTION TO DISMISS AND STAYING PETITION |
| STEVEN ORNOSKI, Warden, | |
|     Respondent. | |
| _____/ | |
| BOARD OF PAROLE HEARINGS; and ARNOLD SCHWARZENEGGER, Governor, | |
|     Real Parties in Interest | |
| _____/ | |

    In this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, Petitioner John E. Dannenberg, a California State prisoner incarcerated at San Quentin State Prison, alleges that his right to due process was violated when he was denied parole.

    Respondent Steven Ornoski moves to dismiss this action, or, alternatively, to strike portions of the petition, the supporting memorandum of points and authorities, and the exhibits. Petitioner

opposes this motion. The matter was heard on May 12, 2006. Having considered all of the papers filed by the parties and oral argument, the Court grants Respondent's motion.

BACKGROUND

In 1986, a jury acquitted Petitioner of the first-degree murder of his wife, but found him guilty of second-degree murder. Petitioner was sentenced to a term of fifteen years to life. He has now been incarcerated for over nineteen years.

In 1999, as on two prior occasions, the Board of Parole Hearings (Board) declined to grant Petitioner a parole release date. The Board noted that Petitioner had no previous record, that his behavior while incarcerated had been commendable, that there were no psychiatric factors to consider and that he had viable parole plans. Nonetheless, the Board concluded that Petitioner's crime demonstrated a continuing public danger, thus making him unsuitable for parole, because the murder was "especially callous and cruel" and was committed for a trivial reason.

Petitioner filed a habeas petition in the Marin County Superior Court based on this denial of parole. The court granted the petition and ordered the Board to hold another parole suitability hearing within thirty days, noting that it anticipated that, absent changed circumstances or evidence not presented, the Board would set a parole date. See In re Dannenberg, 102 Cal. App. 4th 95 (2002), rev'd, 34 Cal. 4th 1061 (2005). On appeal, the court affirmed the trial court's conclusion that the Board had proceeded incorrectly. Id. The appellate court ruled that once a prisoner with an indeterminate life sentence reaches minimum parole

2

eligibility, the Board must set a fixed date for parole release, pursuant to the principle of "uniform terms" for crimes of similar gravity, and with due regard for the statutory minimum term for the inmate's offense, unless it finds the prisoner's crime "particularly egregious" in comparison to other offenses of the same class.  It directed the superior court to order that the Board hold a new parole hearing, under the proper standards, as expeditiously as possible.

The California Supreme Court, however, reversed the appellate court's judgment.  In re Dannenberg, 34 Cal. 4th 1061 (2005).  It held, in part, that the "Board's conclusion that Dannenberg remains too dangerous for parole because his offense was especially callous and cruel, and was committed for a trivial reason, relied upon facts beyond the minimum elements of second degree murder, and was supported by some evidence.  The Board's decision to deny parole thus comports with the law."  Id. at 1071.

Petitioner now seeks relief from this Court.

DISCUSSION

Respondent contends that this action must be dismissed for two reasons.  First, because Petitioner does not have a liberty interest in early release on parole that is protected by federal due process, this Court lacks subject matter jurisdiction.  Second, Petitioner failed to exhaust his State judicial remedies.  If the Court fails to dismiss this action, Respondent argues, the Court should strike portions of the habeas petition and attachments because they contain misleading and irrelevant information.

I.  Federally Protected Interest

Although a convicted person has no inherent or constitutional right to early release on parole, a State's statutory parole scheme may create "a presumption that parole release will be granted" if it uses mandatory language. Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 12 (1979). This presumption of parole release gives rise to a constitutionally protected liberty interest that cannot be denied without adequate due process protection. Id. at 11-16; see also Board of Pardons v. Allen, 482 U.S. 369, 376-78 (1987).

In Allen, the United States Supreme Court held that Montana's statutory parole scheme, which instructed that the parole board "shall" release a prisoner on parole absent certain conditions, used mandatory language such that it created a constitutionally protected right that parole would be granted if those conditions were not found to exist. Allen, 482 U.S. at 376-78. Also, in Greenholtz, the Supreme Court held that Nebraska's parole statute, which instructed that the parole board "shall" release the prisoner on parole absent certain conditions, created a liberty interest in release on parole if those conditions were found not to exist. Greenholtz, 442 U.S. at 11-12.

California's parole scheme largely parallels the Montana and Nebraska schemes. California Penal Code § 3041 instructs that the Board "shall set a release date" unless it decides this is inadvisable based on the nature and timing of the offense and in consideration of public safety:

4

> [a] One year prior to the inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall . . . meet with the inmate and shall normally set a parole release date . . . . The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates. The board shall establish criteria for the setting of parole release dates and in doing so shall consider the number of victims of the crime for which the inmate was sentenced and other factors in mitigation or aggravation of the crime . . .
> [b] The panel or the board, sitting en banc, shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

Cal. Penal Code § 3041(a), (b).

The Ninth Circuit has held that the California parole scheme "gives rise to a cognizable liberty interest in release on parole" under the Allen and Greenholtz standards because it "'creates a presumption that parole release will be granted' unless the statutorily defined determinations [set forth in § 3041(b)] are made." McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002)(quoting Greenholtz, 442 U.S. at 12); see also Biggs v. Terhune, 334 F.3d 910, 915-16 (9th Cir. 2003)(stating that § 3041 creates a liberty interest in parole that is protected by the due process clause, but holding that parole can be denied based on the gravity of the commitment offense). Thus, under Ninth Circuit authority, the mandatory language of California's parole scheme creates a federally protected liberty interest such that an inmate has a federal right to due process in parole proceedings. Ninth Circuit authority is binding on this Court. Respondent's argument

5

1 that the Court is not bound by previous Ninth Circuit decisions is
2 incorrect.

3 Respondent contends that, under <u>Sandin v. Connor</u>, 515 U.S. 472
4 (1995), although "states may under certain circumstances create
5 liberty interests which are protected by the Due Process Clause,
6 . . . these interests will be generally limited to freedom from
7 restraint" which "imposes atypical and significant hardship on the
8 inmate in relation to the ordinary incidents of prison life." <u>Id.</u>
9 at 483-84. Because Petitioner can expect to be imprisoned for
10 life, Respondent claims, denial of parole is not an "atypical" or
11 "significant hardship," so § 3041 does not give rise to a State-
12 created liberty interest.

13 However, <u>Sandin</u> did not foreclose the possibility that a State
14 parole scheme may create a protectable liberty interest; it did not
15 discuss parole at all. The Ninth Circuit has interpreted <u>Sandin</u> as
16 applying "to internal disciplinary [prison] regulations" only.
17 <u>McQuillion</u>, 306 F.3d at 903. Furthermore, the fact that <u>McQuillion</u>
18 was decided after <u>Sandin</u> illustrates that the Ninth Circuit
19 considered <u>Sandin</u> when it held that § 3041 creates a liberty
20 interest in parole, and determined that <u>Sandin</u> did not preclude
21 this holding.

22 Respondent relies on the California Supreme Court's decision
23 in Petitioner's case, which determined that Petitioner's individual
24 parole suitability must be ascertained before the Board attempts to
25 set a term that would result in uniform parole dates for similar
26 crimes. 34 Cal. 4th at 1098. In other words, the California
27 Supreme Court determined that Penal Code § 3041(a)'s term-
28

6

uniformity concerns only arise if the inmate is found suitable under § 3041(b). However, the court did not address whether § 3041(b) creates a federally protected liberty interest in parole. Indeed, the court used language that indicated it assumed such a liberty interest exists: "the Board has always enjoyed broad parole discretion with deferential judicial oversight. But these well-established principles do not deny due process. On the contrary, they define and limit the expectancy in parole from a life sentence to which due process interests attach." 34 Cal. 4th at 1095 n.16; see also id. at 1094 ("sole reliance on the commitment offense might . . . contravene the inmate's constitutionally protected expectation of parole.") Thus, in its opinion in this case, the California Supreme Court did not undermine the Ninth Circuit's holding in McQuillion that § 3041 creates a federally protected liberty interest in parole release absent the finding of certain conditions.

After the California Supreme Court decided Petitioner's case, several district courts have addressed how its opinion affects the Ninth Circuit's holding in McQuillion. A court in the Eastern District of California recently held that Dannenberg stands for the proposition that California's parole scheme is not mandatory, and thus it does not create a federally protected interest in parole release. Sass v. California Bd. of Prison Terms, 376 F. Supp. 2d 975, 983 (2005), appeal docketed, No. 05-16455 (9th Cir. July 12, 2005). The majority of district courts, however, that have addressed this issue have determined that Dannenberg did not address the mandatory nature of the parole statute, and thus did not affect

7

McQuillion's holding that California's statute creates a federally protected liberty interest in parole release. See Guzman v. Kane, 2006 WL 83060 (N.D. Cal.); Chilchil v. Kane, 2006 WL 83057 (N.D. Cal.); McCauley v. Brown, 2006 WL 83050 (N.D. Cal.); Machado v. Kane, 2005 WL 3299885 (N.D. Cal.); Thompson v. Carey, 2005 WL 3287503 (E.D. Cal.).[1]

Because the Ninth Circuit specifically held in McQuillion that California's parole scheme creates a federally protected liberty interest, and because the California Supreme Court in Dannenberg did not address this issue, the Court rejects Respondent's argument that there is no protected liberty interest in parole for California inmates. The Court has jurisdiction over this petition.

II. Failure to Exhaust

Respondent contends that Petitioner failed to exhaust his State remedies for several of his claims. Specifically, he contends that Petitioner failed fairly to present the following issues in State court: the Board's regulations are unconstitutionally vague; Petitioner's right to a jury trial was violated; the Board's denial of parole violates Petitioner's Fifth Amendment right to be protected from double jeopardy; and the Board's fact finding procedure is defective.

Prisoners in State custody seeking federal habeas relief are first required to exhaust State judicial remedies, either on direct

---

[1] Unpublished cases in this district have reached the same conclusion. See Lewis v. Solis, 2005 WL 3454137 (N.D. Cal.)(unpublished); Mason v. Hamlet, No. C 02-5363 JF (N.D. Cal.)(unpublished); Blankenship v. Kane, 2006 WL 515627 (N.D. Cal.)(unpublished).

8

1 appeal or through collateral proceedings, by presenting the highest
2 State court available with a fair opportunity to rule on the merits
3 of each and every claim they seek to raise in federal court. See 28
4 U.S.C. § 2254(b), (c); Rose v. Lundy, 455 U.S. 509, 515-16 (1982);
5 McNeeley v. Arave, 842 F.2d 230, 231 (9th Cir. 1988).  The State's
6 highest court must be given an opportunity to rule on the claims.
7 See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (petitioner
8 must invoke "one complete round of the State's established appellate
9 review process.").  However, exhaustion does not require repeated
10 assertions if a federal claim is actually considered at least once
11 on the merits by the State's highest court.  See Castille v.
12 Peoples, 489 U.S. 346, 350 (1989); Greene v. Lambert, 288 F.3d 1081,
13 1086-87 (9th Cir. 2002).  This is true even where alternative
14 avenues of review are still available in State court.  See Castille,
15 489 U.S. at 350.

16    The exhaustion requirement is not jurisdictional, but rather a
17 matter of comity.  See Granberry v. Greer, 481 U.S. 129, 133-34
18 (1987).  However, a district court may not grant an unexhausted
19 petition unless there are exceptional circumstances.  See Edelbacher
20 v. Calderon, 160 F.3d 582, 585 (9th Cir. 1998) (requiring "extremely
21 unusual circumstances"); Sweet v. Cupp, 640 F.2d 233, 236 (9th Cir.
22 1981) (exhaustion requirement may be avoided by showing that it
23 would be futile in light of prevailing decisions of highest State
24 court).

25    Petitioner does not claim to have presented all of his claims
26 to the State courts.  But he nonetheless contends that he has
27 properly exhausted his federal claims for relief.  He notes that, in
28

9

reviewing the appellate court's judgment granting him habeas relief, the California Supreme Court limited briefing and argument to the following issue:

> At a parole suitability hearing that is held pursuant to Penal Code section 3041, must the Board of Prison Terms generally engage in a comparative proportionality analysis with respect to offenses of similar gravity and magnitude and consider base term matrices used by the Board in setting release dates and deny a parole date solely on the basis of the circumstances of the offense only when the offense is particularly egregious, or may the Board first determine whether the inmate is suitable for parole because he or she is no longer a threat to public safety and engage in a proportionality analysis only if it finds the inmate suitable for parole?

In re Dannenberg, 63 P. 3d 212 (2003). The court's decision, however, was much broader. Petitioner contends that his additional claims come directly from the California Supreme Court's ruling in his case. He claims that he did everything he could to present all of his claims, but because the foundation for some of his claims is based on the actions of the California Supreme Court itself, those matters cannot be reviewed by a lower State court and must be determined in this federal habeas petition.

Petitioner, however, is incorrect; he did not do everything he could to present all his claims to the California Supreme Court. Although the grounds upon which the California Supreme Court accepted review of his case were narrow, Petitioner raised at least one argument that was not within the scope of the issues set forth in the order granting review. See In re Dannenberg, 34 Cal. 4th at 1099 n.19. The California Supreme Court addressed that issue, noting that it was "reluctant to issue a straight reversal of the Court of Appeal's judgment -- thus effectively reinstating the

10

1 Board's order denying parole -- without examining all bases upon
2 which Dannenberg has claimed, both here and below, that the Board's
3 order is defective." Id.  Thus, Petitioner could have presented his
4 unexhausted claims to the California Supreme Court, even though they
5 were outside of the specific scope of review.

6    Petitioner's claims concerning his right to a jury trial and to
7 be protected from double jeopardy, and his claims under Apprendi v.
8 New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S.
9 296 (2004), did not arise out of the California Supreme Court's
10 opinion, nor were those claims addressed in it.  Furthermore,
11 Petitioner filed a petition for rehearing with the California
12 Supreme Court.  That petition, however, did not contain Petitioner's
13 arguments that his right to a jury trial was violated or that the
14 Board's denial of parole violated his Fifth Amendment right to be
15 protected from double jeopardy, or his related argument, based on
16 Apprendi and Blakely, that the Board's denial of parole takes his
17 sentence outside the normal or standard sentencing range.  Instead,
18 the only issues raised in the petition for rehearing were whether
19 the California Supreme Court's construction of § 3041 in In re
20 Dannenberg represents an unforeseeable judicial expansion of a penal
21 statute, and whether its retroactive application to Petitioner's
22 punishment for a 1985 offense violates due process, issues
23 Petitioner also raises in his habeas petition before this Court.
24 See 2005 WL 916216 (Petition for Rehearing, February 7, 2006).
25    On the other hand, Petitioner's claim regarding the Board's
26 fact-finding was addressed by the California Supreme Court.  In
27 addition, his unconstitutional vagueness claim is that the

California Supreme Court created the vagueness through its opinion in In re Dannenberg; further exhaustion of these claims would be futile. See Sweet, 640 F.2d at 236.

Nonetheless, Petitioner presents new arguments in his habeas petition before this Court that were not considered by any State court. The highest court of California must have a fair opportunity to address the merits of all of Petitioner's claims. It has not. Thus, Petitioner's petition must be dismissed. See Rose, 455 U.S. at 522 ("a district court must dismiss habeas petitions containing both unexhausted and exhausted claims").

## CONCLUSION

For the foregoing reasons, the Court GRANTS Respondent's Motion to Dismiss (Docket No. 9).[2] Petitioner has not exhausted all of his claims; specifically, he has not exhausted his claims that his right to a jury trial was violated and that the Board's denial of parole violates his Fifth Amendment right to be protected from double jeopardy, nor his Apprendi and Blakely claims. His federal habeas petition is stayed and held in abeyance so that he may exhaust in State court his unexhausted claims. Because Petitioner is returning to State court, he should, in an abundance of caution, exhaust all of the claims that Respondent contends are unexhausted. Petitioner must file his unexhausted claims in State court within thirty days from the date of this order and he must file a motion to amend his petition in federal court within thirty days after State court exhaustion is completed. Petitioner's federal habeas petition will

---

[2] Respondent's ex parte request for extension of time to file his reply (Docket No. 14) is GRANTED.

12

be held in abeyance until thirty days after the California Supreme Court rules on his State petition.  Petitioner is ordered to file quarterly status reports of his State court habeas proceedings with this Court beginning four months from the date of this order and to notify this Court promptly when his exhaustion is completed.

IT IS SO ORDERED.

Dated: 8/11/06

CLAUDIA WILKEN
United States District Judge

13